Next case is number 2012-1641, CRIMAR SYSTEMS v. FOUNDRY NETWORKS. Mr. Hoffman. Please recall. Claim 17 requires 10-base T wiring to carry out the claimed method. The technical advisor in the district court here ignored fundamental differences between 10-base T wiring and the Green Book wiring. So you're talking about the obviousness, which is kind of the second issue here, right? We believe the obviousness is a primary issue also, Your Honor. These differences teach away from substituting 10-base T wiring into the Green Book, as was done by the district court. Why do they teach away? There are two reasons. Because of the requirements of the Green Book wiring. The specific requirements are mandated by the Green Book. But that's almost always true when you've got a reference that isn't anticipatory and that has to be changed. The fact that it needs to be changed doesn't teach away from making the change, does it? Except in this instance when the wiring is critical to the performance of the underlying reference, as it is here. Any substitution of that wiring would render it inoperable, which is another reason why it teaches away. But because the Green Book reference is built on specific wiring that requires an end-to-end shield... You'd have to use a different network card to substitute the wiring. No, no. It's way beyond that, Your Honor. I think the other side said that you just simply replace the network interface card. Is that not correct? That's not enough. That's not correct. There's lots that have to be done. The network that is built in the Green Book is predicated on wiring that has an end-to-end shield to carry out a specific signal... Well, that's what you say. How do we know that? First of all, our expert provided a testimony on the criticality of each of the... Where did the expert say what you just said, that substituting the network interface card wouldn't allow you to change the wiring? The technical expert said that the wiring was critical to the performance of the Green Book. No, but where did he say that substituting the network interface card wouldn't be enough to allow a change in the wiring? I'm not sure that he used those exact words, Your Honor, except to the extent that he said all of the elements of the wiring were necessary to the performance, more than just the network interface card. Again, he talked about the end-to-end shield that was necessary. The fact that the Green Book has to be physically connected at all times in order to detect for broken wires. And the fact that the signal that is carried by the Green Book has to operate at up to 62.5 MHz. And the 10BASE-T wiring at the time was rated only up to 16 MHz. So there was a lot more than just changing the network interface card that's critical. But he didn't say that. He talked about all of the wiring that was necessary and critical to the performance of Green Book. He did, and I can tell you where he said that. Where did he say you couldn't substitute wiring if you changed the network interface card? Your Honor, he never used those words. Okay. The technical advisor in the court also made at least four legal errors. One, by judging the credibility of the witnesses and by resolving factual disputes against crime or even going so far as to fill in missing evidence. Second, by failing to consider the Green Book in its entirety in making its analysis. Third, by modifying the reference in its anticipation analysis. And fourth, by applying collateral estoppel to issues that were admittedly different from those in the earlier Cisco case. I'd like to first address the differences in the wiring, and I'll take them up, and why they're specified, and their effect on the overall system. And then I'd like to turn to the legal errors made by the technical advisor, who was a non-lawyer, that exceeded his role on summary judgment by acting as both witness and jury. The very first fact about the wiring is that one skilled engineer would never replace the shielded wiring in Green Book with the unshielded wiring in the 10BASE-T standard. In Green Book, it specifically says at page A7976 that the medium is the 150 ohm shielded twisted pair cable. In contrast, 10BASE-T standard says that it's for one specific unshielded twisted pair medium. That is, operates at 100 ohm. The 10BASE, I'm sorry, the Green Book also says that the connector, the other part of the wiring, the wiring is two components. A wire component and a connector component. It says that the connector component shall be the sub-miniature D, it says the shielded 9-pin D connector shall be used. So both the wiring and the connector, the wire component and the connector component must be shielded. And that's critical to the performance of the Green Book because the signal that operates requires the shielding so that it doesn't violate the FCC emissions requirement, which were also a stated mandate of Green Book that it had to meet the FCC emissions requirements. Further, one skilled yard, I think, as I said, would never put a 62.5 MHz signal, that was the NERSI signal that was specified in Green Book, on cabling that was only rated to 16.5, I'm sorry, to 16 MHz. Another problem is the Green Book wiring allow, cannot form associated current loops, which are required by Claim 17. Actually, they're in Claim 14 in the construction. An associated current loop is a current loop that only is formed through the piece of equipment, and this way you can relate the flow of the current through the associated current loop to the physical connection of a piece of equipment. In contrast, the Green Book wiring allows for the fact that there may be multiple current loops, one through the piece of equipment and one through the wiring itself. There's also a finding in the first case that loopback feature was not critical to the Green Book and it could be done without it, right? That's correct, but it always has to be checked for. And then the criticality here is in the Green Book network, because you may have it, one can never create an association because it always has to look for it, whether or not it's present. So the fact is it could appear and it could not. And in the Green Book, you could never then relate the flow of current to physical connection because of the possibility that this loopback connection would occur, creating a second current loop. The Green Book also, sorry, the method of Claim 17 also is a two-step process. First, you have to achieve continuous current flow through an associated current loop. And then secondly, you monitor that flow to detect a discontinuity in the flow that's indicative of physical disconnection. And the reason that you need to achieve continuous current flow in the method is because the wiring in the Green Book does not have those retaining, I'm sorry, the wiring in 10Base-C wiring does not have those retaining screws like it does in the Green Book. Remember, the Green Book requires physical connections to maintain the shield and to operate. So it presupposes physical connection. And therefore, in an opposite way, the 10Base-T wiring has that quick connect coupler called the RJ45, which need not be physically connected. So the only way to determine whether there's a physical connection is to first achieve continuous current flow in the method of Claim 14. Only thereafter can you monitor that to determine whether a physical disconnection has occurred by detecting a discontinuity in that flow. Contrarily, the Green Book rests upon the premise that you are physically connected and you never need to achieve continuous current flow in order to detect a broken wire state. Now, the indications that are achieved from Claim 17 are also different from those achieved in the Green Book. In Claim 17, the indication is that if you achieve continuous current flow, then a discontinuity is indicative of physical disconnection. Contrarily, in the Green Book, one need never achieve continuous current flow and the zero-volt condition is indicative of broken wires. Now, a broken wire is a very different thing from a physical disconnection. A broken wire literally means a physical break in the cable plant, where a physical disconnection is an unplug at the piece of equipment. Well, they're different, but they both cause the same result. I disagree in the sense that when a network designer is designing, you know, the circuit designer is designing what he's doing here, there's an indication that was set up in the method of Claim 17 that was specified, and the indication of a discontinuity in flow is a physical disconnection. So the system isn't capable of detecting a broken wire. It can't operate if there's a broken wire because you eliminate the possibility then of checking for a physical disconnection. But what's the difference? I mean, if you eliminate the loop-back condition from the Green Book and you say that that's not a key feature, doesn't the Green Book and the patent intervention here do exactly the same thing? It may have a different objective in the sense that the Green Book was designed to detect a broken wire condition, and this patent is designed to address the absence of the device, the disconnection of the device, but they do the same thing, right? I disagree, Your Honor. What do they do different? Okay, because the Green Book is only capable of detecting a broken wire which requires a physical connection. That's just not true, that it's only capable of detecting a broken wire. It can also detect the disconnection of the device, right? The Green Book teaches looking for a broken wire. I understand that, but forget about what it teaches to look for. The detection is the same. In the Green Book, it will detect a broken wire and the disconnection of the device. It will detect both of those, either one of those, right? I think in the hypothetical case you give, Your Honor, it would give an indication. That's correct. But the indication, the problem is the Green Book doesn't teach that because it requires the end-to-end shield to operate and one would never disconnect at the deconnector. That's why it teaches looking for broken wires, and the purposes are absolutely opposite. To check for a broken wire, you have to remain physically connected. Can I just ask you, this case took six years to get to summary judgment. Yes. Is there any apparent reason? I know you had a special master and you had a technical advisor Is there any other apparent reason? There were three defendants when it originally started. It just took a long time to get through the system. We had a special master. We had several hearings before the special master, one on Markman, one on collateral estoppel, and finally one on summary judgment. It just took a long time to get through the system. In the beginning, I'm sorry, I think in the beginning, I'm trying to remember, I came in late. I came in at the Markman. I think there may have been a stay temporarily during the Cisco case. I don't think, I'm sorry, I just noticed, I got involved. When was the Cisco case resolved? The trial on Cisco? The Cisco decision. It was settled after that? The Cisco decision, 2006, 2004, I'm sorry. So that was before I started the clock running on time. I think that's right. I think that's right. Let's hear from the other side. Mr. Cutler. Thank you, Judge Newman. May it please the court, my name is Neal Cutler. I represent Foundry Networks. I'd like to begin with the main issue, as Judge Perez has said it, and the way briefs have it, which is my friends claim that the two circuits, the one in the 260 patent and the Green Book are different, and that is just false. The two circuits look the same. The two circuits do the same things, as Judge Dyke, you said, that ultimate detection network is the same, and the two networks contain the same elements and limitations, and for that reason we believe that the Green Book anticipated Claim 14 of the 260 patent. That's what the special master said. That's what the expert advisor said. Is that completely irrelevant? I think that for purposes of this appeal, yes. I think that the question on anticipation, as this court framed it in Apotex, is are all the claims and limitations present, and under the Green Book, yes, every claim and limitation is present, and that was, I believe, my friend's colloquy with Judge Dyke. The detection network does exactly the same thing. Both of these networks work the same way. They shoot current, DC current, through a wire and through the concentrator to the computer and then back again, and they simply ask whether or not there is some sort of break in that circuit or not, and if there's a break, then you have a detection that goes off or not, and so they do the exact same thing. There's no difference between the two. Now, my friend's claim is, well, our network, the Green Book network, has a wrap-back connector, and that makes it somehow different, and we think that's problematic for two reasons. One, as Judge Dyke, you were saying, the Cisco decision in finding 31 makes absolutely clear that the wrap-back connector is not required. That's the loop-back. It's exactly the same thing, and if you don't have the wrap-back, it's unequivocal that the two circuits function exactly the same way. They do exactly the same thing. Now, when you have a wrap-back, the only difference is that this Green Book network is a more sophisticated variant. It has three states of operation. It can detect whether or not everything is working properly, that is, that there are no broken wires, no improperly connected wires, and that the computer is connected, or it can detect if there is a break, if the computer is unplugged from the wall. That's all the wrap-back circuit does. It's a more sophisticated version of the 260 Claim 14 patent that's at issue here. The fact that it's more sophisticated doesn't at all mean, of course, that there's not an anticipation. There is. And so we think that the Claim 14 argument is pretty much foreclosed by Cisco and the wrap-back findings as well as findings 29 and 33, which make absolutely clear that this works with respect to disconnections, that that's what this network does. It finds disconnections just as the 260 patent does. If there are no other questions on Claim 14, I can... But we can elaborate on why Claim 17 is not independent of 14. Absolutely. So we believe that Claim 17, just as the district court found, is invalid because it is obvious. And what the district court found and what the expert advisor found is that 10-base-T wiring, which is the only difference between Claim 17 and 14, Claim 17 is just one sentence long and depends from Claim 14, and simply says Claim 14 plus the use of 10-base-T wiring. And what the district court and the special master and the expert advisor all found is that 10-base-T wiring was a commonly used form of wiring and that that isn't at all relevant to the underlying invention here, which is the cable detect circuit. You can use, as all of these different decision makers said, any wiring. It doesn't matter. The fact that 10-base-T wiring would be used, as the expert advisor put in, I think, paragraph 53, something that, because it's commonly used, would motivate lots of people to use 10-base-T wiring. It's a very commonly used form of wiring. Indeed, their own patent in the 260 patent even acknowledges that 10-base-T wiring is commonly used. And so swapping out one form of wiring for another is something that, as the district court and the expert advisor found, was an entirely reasonable thing to do, and, indeed, people would have been motivated to do it. Now, my friend stood here and said, well, no, there's a difference because of FCC shielding requirements and the like. Now, there is no evidence whatsoever in the record that FCC shielding requirements will affect the use of 10-base-T wiring for the cable detect circuit. What he is talking about is the overall Green Book invention of the interoperability solution, and that's why our brief goes through the history about what the Green Book is. It's not just about this cable detect circuit. It's a much bigger solution to the problem of using copper wiring in place of fiber optic cables because they're cheaper and were already existing in buildings. And he's absolutely right with respect to the wires that run through buildings on the whole. They need to be shielded. But with respect to the cable detect circuit, there's no evidence that he's provided that there's FCC requirements or anything else that says that 10-base-T wiring will interfere with the performance of the cable detect circuit. You can use any form of wiring. And if there's any doubt, our brief at pages 40 to 41 reprises that evidence, and I also direct reports to Joint Appendix page 803, the expert report, which goes through. I won't read it, but the expert report even says that there was a commercially available product by Synoptics in 1989 that used 10-base-T wiring in a cable detect circuit, and it worked. And so, for purposes of summary judgment, we think that there is no genuine issue of material fact. Now, on that point, your friend started by making kind of a global critique of what went down here, and that consisted of a special technical advisor making legal conclusions as a non-lawyer and making credibility determinations on summary judgment. So do you have any response to that? Absolutely. We don't think that there were any credibility determinations being made, and indeed, everything that I've said to you today flows just as much from their own experts' concessions, McGilvra's, as anything else. There's no dispute. I'm not sure about that. I've read part of his testimony. To a large extent, he declined to answer the relevant questions. Well, I do think that McGilvra does decline to answer many questions, but when you look at it, I think McGilvra teaches, it says essentially three things. Number one, he says that the Green Book is capable of detecting physical disconnection just as much as the 260 patent. That's at pages 86, 63, and 64. So that's the testimony about if a thief takes the computer in the Green Book circuit, would it trigger the automatic sensing? And the answer that McGilvra ultimately gives under cross-examination, and admittedly, he was trying to dance around the question, but he ultimately says yes. Second, he admits that the Green Book functions with continuous current. That's at page, Joint Appendix 676. And third, he says that the 260 patent does the exact same thing as the Green Book with respect to detecting broken wires, and that's at pages 649 and 650. That's the rat eating the cable and all of that. And once you take those three things, I don't think that there's anything left. To be sure, McGilvra did talk about how the assumption behind the Green Book patent is that wires can't be broken, and that all of these questions about rats and so on violate an assumption of the patent. But you can't patent an assumption. I understand that their patent has a different assumption, that wires won't be broken. You could apply that assumption just as much to the Green Book circuit, and you would get the same result. Ultimately, the two networks do exactly the same thing, and we don't think that there is any genuine issue of material fact. Judge Most, as you said, this case has been going on a long time. This technology is 20 years old, and this litigation in one form or another has been going on for over a decade. We do think it's about time to stop this because every decision maker that's looked at it, that is the special master, the expert advisor, the district court, and indeed the district court at Cisco, have all concluded that there's nothing here. If there are no other questions. Okay, thank you. Mr. Hall. Thank you, Your Honor. First of all, I'd like to address the fact that my brother counsel said there was nothing that precludes the 10Base-T wiring from being used only in the cable detect portion. And I believe we cited in our brief reference to page 89... I'm sorry, A-9-1-1-9. On that page, the author of the Green Book specifically says that the shell on the deconnector, the shielding shell, provides the necessary ground for that cable detect circuit to work. So not only did we present evidence that it doesn't work from an overall standpoint if you substitute 10Base-T wiring in the Green Book, we also showed how the cable detect circuit would unlikely work as a result of that substitution. Now, I heard my brother counsel also say that Green Book specifically doesn't look for broken wires. But that's what the whole Green Book circuit is designed to do because they had a very special problem with the wiring. This wiring, they had to maintain the shield and the loop integrity. So the way that they did that is they knew they were physically connected and then they put a scheme on to look for broken wires. And that's why the indication of zero volt is broken wires. And the only reason that can be indicative of broken wires is because the predicate requires physical connection on the cabling, and they knew that going in. The very opposite is true in connection with the method. Now, the method here, it's been skirted around several times. It doesn't detect disconnection. The claim construction that is in this case very different from claim one is it requires a physical disconnection, a specific kind of disconnection. And nowhere does the record show that Green Book is capable of detecting... But the process of the patent will also detect a broken wire, right? That's not what the method is, Your Honor. No. The answer is yes, it will detect a broken wire, right? You say it's not the purpose, but it will do it, right? If the circuit, I mean the preferred embodiment of the circuit, if there's a break in the associated current loop, it will give an indication. It will give an indication if there's a broken wire, right? It will give an indication, but remember these are... If there is a broken wire. It will give an indication, Your Honor. That's correct. However, there's a problem with that because these things are set up in big buildings, and they're in rooms, and there's somebody sitting in a central room. And the indication from the method of claim 14 is that there's been a physical disconnection, and he's going to go out in the real world and look for a computer that's been disconnected. Just the opposite is true in Green Book. If a physical, I'm sorry, if a zero-volt indication occurs, the operator sitting in that room is going to think that a broken wire occurred because that is the constraints from the wiring upon which the detection schemes are built. So... Can you finish your thought? Your Honor, I'm sorry, I lost my train of thought there for a moment. Any more questions, Your Honor? Any more questions? We have it in mind. Thank you, Your Honor. Thank you both for taking on this position.